UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> CHARLES PARADISE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MASSACHUSETTS GENERAL HOSPITAL, ) <br> MASSACHUSETTS GENERAL PHYSICIANS ) <br> ORGANIZATION, INC., and ) <br> MGH OPTIMUM CARE COMMITTEE, ) <br> ) <br> Defendants. ) | Civil No. 1:13-cv-11070-DJC |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION TO DISMISS

This is a qui tam action under the False Claims Act, 31 U.S.C. § 3729. The case involves Massachusetts General Hospital's treatment of a 91-year-old pneumonia patient, Ruth Paradise, in April 2007. Her son, Charles Paradise, alleges the Hospital did not provide proper treatment or follow proper procedures in connection with his mother's end-of-life care. He has filed suit against the Hospital, the Massachusetts General Hospital Physicians Organization, and the MGH Optimum Care Committee.[1]

Under Fed. R. Civ. P. 9(b) and 12(b)(6), the defendants move to dismiss because the Complaint fails to allege with particularity that they submitted any false claim to the Government. Alternatively, the defendants move to dismiss because Mr. Paradise cannot enforce an alleged violation of the Patient Self-Determination Act by pursuing a claim under the False Claims Act.

---

[1] The Committee is misnamed as a defendant because it is not incorporated as a legal entity. (See Compl. ¶ 10.)

**BACKGROUND**

For purposes of this motion, the defendants assume the truth of the following allegations. Ms. Paradise was admitted to the Hospital on April 4, 2007. (Compl. ¶ 43.) She did not have the capacity to make treatment decisions for herself. Id. at ¶ 44. She had designated Mr. Paradise as her health care agent. Id. at ¶ 45. Her medical record reflected this designation. Id. at ¶ 49. According to Mr. Paradise, because his status as health care agent was not shown prominently on his mother's medical record, there was a miscommunication about whether she should receive a temporary feeding tube. Id. at ¶¶ 46, 49. Mr. Paradise also alleges that in making decisions about Ms. Paradise's treatment, the defendants substituted their judgment for his judgment. Id. at ¶ 47.

The Complaint alleges that the defendants' employees injured Ms. Paradise's arm while they were transferring her on April 7, 2007. Id. at ¶ 46. Mr. Paradise further alleges that the defendants did not provide his mother with enough nutrition, that they did not consult him about his mother's preferences and nutritional needs, and that they ignored his request for a chaplain. Id. at ¶¶ 46-48, 51-52, 71. He asserts that if the defendants had provided proper intervention, Ms. Paradise could have returned to the level of function that she had enjoyed before she was admitted to the Hospital. Id. at ¶ 59.

Although the defendants concluded that Ms. Paradise had lost consciousness, this conclusion (in Mr. Paradise's view) was incorrect. Id. at ¶¶ 60, 62. Mr. Paradise contends the defendants refused to provide a neurologist who could offer a second opinion. Id. at ¶ 61. He also complains the defendants did not make a written finding that Ms. Paradise's death was imminent, and did not communicate this finding to him. Id. at ¶¶ 63-64.

Mr. Paradise alleges that the defendants violated the Patient Self-Determination Act of 1990 in connection with his mother's care.[2] Id. at ¶ 54. Specifically, he claims the defendants did not: provide information about Ms. Paradise's rights concerning medical care; provide written policies on these rights; or document, in a prominent part of her medical record, whether she had completed an advance directive. Id. Mr. Paradise also contends that the defendants discriminated against his mother based on whether she had completed an advance directive. Id. Finally, he alleges that over his objection, the defendants withdrew his mother's nutrition. Id. at ¶ 55.

After Ms. Paradise had spent 16 days in the Hospital's care, she was transferred to St. Elizabeth's Hospital on April 20, 2007. Id. at ¶ 53. Unfortunately, she passed away there on May 8, 2007. Id. Mr. Paradise seeks to hold the defendants responsible for his mother's death. Id. at ¶ 67.

## ARGUMENT

**I.   The Complaint must be dismissed because it fails to plead with particularity that the defendants submitted any false claim to the Government.**

The False Claims Act imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). To prevail under the False Claims Act, Mr. Paradise would need to establish that (1) the defendants presented or caused to be presented to the Government a claim for payment, (2) the claim was false or fraudulent, and (3) the defendants acted with knowledge or in deliberate ignorance of, or reckless disregard for, the falsity of information contained in the claim. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004). "The

---

[2] While Mr. Paradise also suggests that the defendants violated 42 Code Fed. Regs. § 46, regarding research on human subjects, his Complaint provides no facts at all in support of this claim. (See Compl. ¶ 2.)

statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995).

Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity. United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013) (quoting Fed. R. Civ. P. 9(b)). This requirement applies to claims under the False Claims Act. Id. (applying Rule 9(b) to claims under False Claims Act, and declining to relax this standard). Rule 9(b)'s particularity requirement serves several important purposes, including to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Karvelas, 360 F.3d at 226 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)); see United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 46 (D. Mass. 2001) (citing New England Data Servs., Inc. v. Becher, 820 F.2d 286, 292 (1st Cir. 1987)) (stating that purpose of particularity requirement is to protect "defendants from groundless charges that may damage their reputations.").

To satisfy Rule 9(b), "[a] relator must provide details that identify particular false claims for payment that were submitted to the government." Ge, 737 F.3d at 123 (quoting Karvelas, 360 F.3d at 232-33). The Complaint must detail "the 'who, what, when, where, and how' of the alleged fraud." Id. (quotation and citation omitted). "Karvelas requires the complaint to provide, among other fraud specifics, 'details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, [and] the amount of money charged to the government.'" United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 46 (1st Cir. 2009) (quoting Karvelas, 565 F.3d 233) (alteration in original). The complaint also should identify

"the individuals involved in the billing." Ge, 737 F.3d at 123 (quoting Karvelas, 360 F.3d at 232-33).

"Because [False Claims Act] liability attaches only to false *claims*, merely alleging facts related to a defendant's alleged *misconduct* is not enough." Id. (citations omitted). It is also insufficient for a complaint to allege that a defendant has violated federal regulations. Karvelas, 360 F.3d at 234 (citations omitted) ("[A]lleged violations of federal regulations are insufficient to support a claim under the [False Claims Act]."). To survive dismissal, a complaint "must 'sufficiently establish that false claims were submitted for government payment' as a result of the defendant's alleged misconduct." Id. (quoting United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733 (1st Cir. 2007)).

Recently in Ge, the First Circuit Court of Appeals affirmed the dismissal of a complaint that failed to plead a False Claims Act violation with particularity. The relator was a physician who had worked for a pharmaceutical manufacturer. 737 F.3d at 119. She alleged the manufacturer had delayed in reporting adverse events, and provided false information about adverse events, to the Food and Drug Administration. Id. at 120.

When the Court considered the manufacturer's motion to dismiss, it accepted as true that the manufacturer had withheld information from, and lied to, the Food and Drug Administration. Id. at 124. However, this misconduct did not violate the False Claims Act, because the complaint did not allege "facts in support of the proposition that [the manufacturer's] alleged misconduct resulted in the submission of false claims or false statements material to false claims for government payment." Id. The Court concluded the complaint was legally insufficient because it did not detail the circumstances in which any false claim was submitted to the Government. Id.

The First Circuit Court of Appeals reached the same result in Karvelas, where the complaint alleged that a hospital had violated certain federal standards in caring for its patients. 360 F.3d at 223. The theory of liability was that the hospital falsely certified to the Government that it was in compliance with these standards, and that it therefore overbilled Medicare and Medicaid. Id. The Court in Karvelas explained it was not enough for the complaint to allege that the hospital had violated federal regulations, because there was no connection between the claimed violation and the submission of any false claim to the Government. Id. at 232 (citations omitted) (explaining that "liability under the False Claims Act requires a false claim").

The Karvelas complaint was also subject to dismissal because it failed to meet the Rule 9(b) standard. Id. The complaint did not plead with particularity the time, place, or content of any false statement. Id. The relator did not allege when the hospital had billed the Government. Id. at 233. He did not allege the content of the hospital's submissions to the Government. Id. He could not provide the amount or identification number of any claim. Id. He did not identify the person who had submitted the false certifications to the Government. Id. The relator's "failure to identify with particularity any actual false claims that the defendants submitted to the government [was] fatal to his complaint." Id. at 235.

Here, the Complaint suffers from the same deficiencies that required dismissal of the Ge and Karvelas complaints. Mr. Paradise alleges the defendants provided inadequate care to his mother. He also asserts, in a conclusory way, that the defendants violated the Patient Self-Determination Act of 1990 in connection with this care. His Complaint fails, however, to connect the defendants' alleged misconduct with their submission of any false claim to the Government.

To state a False Claims Act violation, Mr. Paradise's Complaint would need to specify "the 'who, what, when, where, and how' of the alleged fraud." Karvelas, 737 F.3d 116 (1st Cir. 2013) (quotation and citation omitted). The Complaint does not contain any of these details. First, it does not identify anyone who submitted a false claim to the Government. Second, the Complaint does not specify what was submitted that was false—the content of the defendants' claim to the Government. Third, the Complaint does not specify when any false claim was submitted. The only allegation on this point is that since 1990, federal regulations have required the defendants to submit annual certifications to the Government.[3] (Compl. ¶¶ 23, 56.) Fourth, the Complaint does not state where any false claim was made. On the fifth and final issue, the Complaint does not explain how any false claim was submitted to the Government.

The Complaint is missing additional facts that Mr. Paradise would need to support an allegation that the defendants submitted a false claim to the Government. For example, Mr. Paradise does not plead the identification number of any false claim. He does not identify the amount of any false claim. He also does not indicate the length of time between the defendants' practices and their submission of a claim based on those practices. Mr. Paradise's failure to include any of these factual details is fatal to his Complaint. See Gagne, 565 F.3d at 46 (citation omitted); see also Ge, 737 F.3d at 123 (quoting Karvelas, 360 F.3d at 232-33).

The Complaint also violates Rule 9(b) because it does not identify which defendant is responsible for which actions. Mr. Paradise asserts, in general, that all the defendants were responsible for submitting false claims to the Government. Because he lumps the defendants

---

[3] Because the Complaint does not allege when the defendants submitted any particular false claim to the Government, Mr. Paradise prevents the Court and the defendants from determining whether the False Claims Act's six-year statute of limitations has run. See Rivera, 55 F.3d at 707 (stating that under False Claims Act, six-year statute of limitations accrues when claim has been submitted to Government).

together, he cannot meet his burden to specify which defendant committed which acts. See, e.g., Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (concluding that complaint was subject to dismissal under Rule 9(b) because it "lump[ed] all the defendants together" and failed to "specify who was involved in what activity").

Mr. Paradise suggests he should be permitted to conduct discovery to uncover violations of the False Claims Act with respect to the defendants' other patients. (See Compl. ¶ 57.) However, "a relator may not circumvent Rule 9(b) with the promise that discovery will eventually fill in the missing gaps." United States ex rel. Carpenter v. Abbott Labs., Inc., 723 F. Supp. 2d 395, 404 (D. Mass. 2010) (citing Karvelas, 360 F.3d at 231). Mr. Paradise cannot take advantage of the discovery process because he has failed to state a claim for violation of the False Claims Act. See id. at 401 (citation omitted) (reasoning that this requirement protects society "from the costs of highly unpromising litigation").

**II.     Even if the Complaint were pled with specificity, it must be dismissed because Mr. Paradise cannot base False Claims Act liability on an alleged violation of the Patient Self-Determination Act.**

Mr. Paradise bases his False Claims Act claim on an allegation that the defendants violated the Patient Self-Determination Act. There are no reported cases—in any federal or state Court—that have even considered basing False Claims Act liability on a violation of the Patient Self-Determination Act. This Court should reject Mr. Paradise's attempt to stretch the False Claims Act beyond any reasonable limits.

In his Complaint, Mr. Paradise alleges that under the Medicare and Medicaid programs, the defendants submitted annual certifications to the Government when they requested payment. (Compl. ¶¶ 23-27.) According to Mr. Paradise's allegations, these certifications did not mention the Patient Self-Determination Act. Id. at ¶¶ 25-26. The certifications were that the defendants

had kept accurate records, had not received kickbacks, and knew and complied "with the law and regulations regarding the provision of health care services." Id.

The Complaint does not allege any facts which would support a claim that the defendants kept inaccurate records. There is also no allegation that the defendants received kickbacks. We are left, then, with Mr. Paradise's allegation that the defendants falsely certified they had complied "with the law and regulations regarding the provision of health care services." This claim fails for two reasons.

First, the Complaint fails to plead factual allegations that would rise to the level of a Patient Self-Determination Act violation. The Patient Self-Determination Act required the defendants to maintain certain "written policies and procedures." 42 U.S.C. § 1395cc(f). Although the Complaint raises a number of concerns about the care that Ms. Paradise received, it does not allege that the defendants failed to maintain the required policies and procedures.

Second, even if Mr. Paradise could plead sufficient facts to establish a violation of the Patient Self-Determination Act, that violation would not render the defendants' care of Ms. Paradise inappropriate and uncompensable. Under Mr. Paradise's theory, any deviation from "the law and regulations regarding the provision of health care services" would subject a hospital to False Claims Act liability. (See Compl. ¶ 26.) This would produce an absurd result. Every claim for medical malpractice involving a Medicare- or Medicaid-eligible patient, for example, would be transformed into a potential False Claims Act violation, with mandatory treble damages and attorneys' fees. This result would also contradict the First Circuit's holding in Karvelas that "violations of federal regulations are insufficient to support a claim under the [False Claims Act]." 360 F.3d at 234 (citations omitted).

9

Mr. Paradise's requested expansion of False Claims Act liability should be rejected. Because Mr. Paradise cannot enforce the Patient Self-Determination Act through the False Claims Act, the Complaint should be dismissed.

## CONCLUSION

It is clear from the Complaint that Mr. Paradise wishes something more could have been done for his mother, and that there could have been better communication about his role as her health care agent.  These allegations, however, are not relevant to his asserted claim. Mr. Paradise is seeking to hold the defendants liable under the False Claims Act.  Because he cannot plead with particularity any details surrounding the defendants' alleged submission of a false claim to the Government, and because liability under the False Claims Act cannot rest on an alleged violation of the Patient Self-Determination Act, his Complaint must be dismissed.

The defendants respectfully request the Court to dismiss the Complaint under Fed. R. Civ. P. 9(b) and 12(b)(6).

MASSACHUSETTS GENERAL HOSPITAL,
MASSACHUSETTS GENERAL HOSPITAL
PHYSICIANS ORGANIZATION, INC., and
MGH OPTIMUM CARE COMMITTEE,

By their attorneys,


/s/ Alan D. Rose
Alan D. Rose (BBO #427280)
Brian D. Lipkin (BBO #673850)
Rose, Chinitz & Rose
One Beacon Street, 23rd Floor
Boston, Massachusetts  02108
(617) 536-0040
Fax: (617) 536-4400
adr@rose-law.net
bdl@rose-law.net

Dated:  February 28, 2014