UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CHARLES PARADISE, <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS GENERAL HOSPITAL, MASSACHUSETTS GENERAL PHYSICIANS ORGANIZATION, INC., and MGH OPTIMUM CARE COMMITTEE, <br><br> Defendants. | Civil No. 1:13-cv-11070-DJC |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT**

This is a qui tam action under the False Claims Act, 31 U.S.C. § 3729.  The case involves Massachusetts General Hospital's treatment of a 91-year-old pneumonia patient, Ruth Paradise, in April 2007.  Her son, Charles Paradise, has filed suit against the Hospital, the Massachusetts General Hospital Physicians Organization, and the MGH Optimum Care Committee.[1]  Mr. Paradise asserts that the defendants billed the Government for "worthless" care which they provided to his mother and other patients.[2]  In addition to his claim under the False Claims Act, Mr. Paradise alleges fraud and unjust enrichment.

Under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), the defendants move to dismiss.  First, the Court lacks subject matter jurisdiction over the First Amended Complaint, because

---

[1] The Committee is misnamed as a defendant because it is not incorporated as a legal entity. (See First Am. Compl. ¶ 14.)

[2] At various points, Mr. Paradise hurls epithets at the defendants to describe their care of elderly patients over two decades.  (See, e.g., First Am. Compl. ¶¶ 1, 15, 17, 60, 81, 83, 87, 94.) Mr. Paradise does not purport to have any knowledge or basis for these spurious and irrelevant allegations, and the Court should ignore them.

Mr. Paradise violated the filing and sealing requirements of the False Claims Act as to the new allegations. Second, the First Amended Complaint fails to allege with particularity that the defendants submitted any false claim to the Government. Third, Mr. Paradise cannot enforce an alleged violation of the Patient Self-Determination Act by pursuing a claim under the False Claims Act. Fourth, Mr. Paradise lacks standing to pursue fraud and unjust enrichment claims on behalf of the Government.

## BACKGROUND

For purposes of this motion, the defendants assume the truth of the following allegations. Ms. Paradise was admitted to the Hospital for treatment of her pneumonia on April 4, 2007. (First Am. Compl. ¶¶ 61-62.) She was alert but disoriented. Id. at ¶ 61. Her medical record stated that she may have had mild dementia. Id. She had designated Mr. Paradise as her health care proxy, but her medical record did not reflect this designation. Id. at ¶ 72.

Mr. Paradise alleges that the defendants did not provide proper care for his mother, in the following ways: the skin on Ms. Paradise's arm was torn while she was being transferred; she did not receive proper nutrition; she had an "aspiration event" while she was eating; an attempt to place a catheter in Ms. Paradise's arm was unsuccessful; no chaplain or clergyperson visited Ms. Paradise; and information on hospice benefits was not provided. Id. at ¶¶ 63-76.

Mr. Paradise contends that the defendants violated the Patient Self-Determination Act of 1990 in connection with his mother's care. See id. at ¶¶ 39-40. Specifically, he claims that over his objection, the defendants placed a "do not resuscitate" order in Ms. Paradise's medical record. Id. at ¶ 70. Mr. Paradise also asserts that: "He was not provided with notice of policies and procedures in general or specifically as to consequences of a finding of medical futility. No

note, prominent or otherwise, was made of his designation as Ruth's health care proxy, nor was a copy taken and placed in the record as required by Massachusetts law." Id. at ¶ 72.

Mr. Paradise alleges (on information and belief) that for his mother's care, Medicare paid $9,000.00 to the Hospital and $1,025.05 to the Massachusetts General Hospital Physicians Organization.[3]  Id. at ¶¶ 79-80.  After Ms. Paradise had spent 16 days in the Hospital's care, she was transferred to St. Elizabeth's Hospital on April 20, 2007.  Id. at ¶ 78.  Unfortunately, she passed away there on May 8, 2007.  Id.

## ARGUMENT

### I. The Court lacks subject matter jurisdiction over the First Amended Complaint, because Mr. Paradise violated the filing and service requirements of the False Claims Act.

"A qui tam relator's standing to bring suit is a threshold question of subject matter jurisdiction." United States ex rel. Poteet v. Lenke, 604 F. Supp. 2d 313, 318 (D. Mass. 2009) (citing Rockwell Int'l Corp. v. United States, 549 U.S. 457, 468 (2007)).  The False Claims Act requires a relator to file the complaint under seal, and serve a copy of the complaint and supporting evidence on the Government.  United States ex rel. Wilson v. Bristol Myers Squibb, Inc., No. 06-cv-12195-NMG, 2011 WL 2462469, at *6 (D. Mass. June 16, 2011) (citing 31 U.S.C. § 3730(b)(2).

In an attempt to meet the particularity requirement of Rule 9(b), Mr. Paradise has added many new factual allegations to his First Amended Complaint.  For example, he has added an entirely new section titled Medicare Provider Agreements, and also has added allegations regarding the amounts of Medicare's payments to the defendants.  (See First Am. Compl. ¶¶ 48-56, 79-80.)  In violation of the False Claims Act, Mr. Paradise did not file these allegations under

---

[3] Mr. Paradise does not make any allegations about the amounts that the defendants claimed.

seal, and did not serve them (with supporting evidence) on the Government. These failures deprive the Court of subject matter jurisdiction over the First Amended Complaint, and require that the First Amended Complaint be dismissed. Wilson, 2011 WL 2462469, at *6-7 (concluding that relator had violated filing and sealing provisions of False Claims Act by adding new allegations to amended complaint); see also United States ex rel. Cunningham v. Millennium Labs. of Cal., No. 09-12209-RWZ, 2014 WL 309374, at *2 (D. Mass. Jan. 27, 2014) (citation omitted) (denying motion to amend based on relator's violation of these requirements).

**II.      The First Amended Complaint must be dismissed because it fails to allege with particularity that the defendants submitted any false claim to the Government.**

The False Claims Act imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). To prevail under the False Claims Act, Mr. Paradise would need to establish that (1) the defendants presented or caused to be presented to the Government a claim for payment, (2) the claim was false or fraudulent, and (3) the defendants acted with knowledge or in deliberate ignorance of, or reckless disregard for, the falsity of information contained in the claim. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004). "The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995).

Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity. United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 123 (1st Cir. 2013) (quoting Fed. R. Civ. P. 9(b)). This requirement applies to claims under the False Claims Act. Id. (applying Rule 9(b) to claims under False Claims Act, and declining to relax this standard). Rule 9(b)'s particularity requirement serves several important purposes, including to "give notice to defendants of the

plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Karvelas, 360 F.3d at 226 (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)); see United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 46 (D. Mass. 2001) (citing New England Data Servs., Inc. v. Becher, 820 F.2d 286, 292 (1st Cir. 1987)) (stating that purpose of particularity requirement is to protect "defendants from groundless charges that may damage their reputations.").

To satisfy Rule 9(b), "[a] relator must provide details that identify particular false claims for payment that were submitted to the government." Ge, 737 F.3d at 123 (quoting Karvelas, 360 F.3d at 232-33). The Complaint must detail "the 'who, what, when, where, and how' of the alleged fraud." Id. (quotation and citation omitted). "Karvelas requires the complaint to provide, among other fraud specifics, 'details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, [and] the amount of money charged to the government.'" United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 46 (1st Cir. 2009) (quoting Karvelas, 565 F.3d 233) (alteration in original). The complaint also should identify "the individuals involved in the billing." Ge, 737 F.3d at 123 (quoting Karvelas, 360 F.3d at 232-33).

"Because [False Claims Act] liability attaches only to false *claims*, merely alleging facts related to a defendant's alleged *misconduct* is not enough." Id. (citations omitted). It is also insufficient for a complaint to allege that a defendant has violated federal regulations. Karvelas, 360 F.3d at 234 (citations omitted) ("[A]lleged violations of federal regulations are insufficient to support a claim under the [False Claims Act]."). To survive dismissal, a complaint "must 'sufficiently establish that false claims were submitted for government payment' as a result of

the defendant's alleged misconduct." Id. (quoting United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733 (1st Cir. 2007)).

Recently in Ge, the First Circuit Court of Appeals affirmed the dismissal of a complaint that failed to plead a False Claims Act violation with particularity. The relator was a physician who had worked for a pharmaceutical manufacturer. 737 F.3d at 119. She alleged the manufacturer had delayed in reporting adverse events, and provided false information about adverse events, to the Food and Drug Administration. Id. at 120.

When the Court considered the manufacturer's motion to dismiss, it accepted as true that the manufacturer had withheld information from, and lied to, the Food and Drug Administration. Id. at 124. However, this misconduct did not violate the False Claims Act, because the complaint did not allege "facts in support of the proposition that [the manufacturer's] alleged misconduct resulted in the submission of false claims or false statements material to false claims for government payment." Id. The Court concluded the complaint was legally insufficient because it did not detail the circumstances in which any false claim was submitted to the Government. Id.

The First Circuit Court of Appeals reached the same result in Karvelas, where the complaint alleged that a hospital had violated certain federal standards in caring for its patients. 360 F.3d at 223. The theory of liability was that the hospital falsely certified to the Government that it was in compliance with these standards, and that it therefore overbilled Medicare and Medicaid. Id. The Court in Karvelas explained it was not enough for the complaint to allege that the hospital had violated federal regulations, because there was no connection between the claimed violation and the submission of any false claim to the Government. Id. at 232 (citations omitted) (explaining that "liability under the False Claims Act requires a false claim").

The <u>Karvelas</u> complaint was also subject to dismissal because it failed to meet the Rule 9(b) standard. <u>Id.</u> The complaint did not plead with particularity the time, place, or content of any false statement. <u>Id.</u> The relator did not allege when the hospital had billed the Government. <u>Id.</u> at 233. He did not allege the content of the hospital's submissions to the Government. <u>Id.</u> He could not provide the amount or identification number of any claim. <u>Id.</u> He did not identify the person who had submitted the false certifications to the Government. <u>Id.</u> The relator's "failure to identify with particularity any actual false claims that the defendants submitted to the government [was] fatal to his complaint." <u>Id.</u> at 235.

Here, the First Amended Complaint suffers from the same deficiencies that required dismissal of the <u>Ge</u> and <u>Karvelas</u> complaints. Mr. Paradise alleges the defendants provided inadequate care to his mother and other elderly patients. He also asserts, in a conclusory way, that the defendants violated the Patient Self-Determination Act of 1990 in connection with this care. Mr. Paradise fails, however, to connect the defendants' alleged misconduct with their submission of any false claim to the Government.

To state a False Claims Act violation, Mr. Paradise's First Amended Complaint would need to specify "the 'who, what, when, where, and how' of the alleged fraud." <u>Karvelas</u>, 737 F.3d 116 (1st Cir. 2013) (quotation and citation omitted). Mr. Paradise cannot supply any of these details. First, the First Amended Complaint does not identify anyone <u>who</u> submitted a false claim to the Government. Second, it does not specify <u>what</u> was submitted that was false— the content of the defendants' claim to the Government. Third, the First Amended Complaint does not specify <u>when</u> any false claim was submitted. The only allegation on this point is that

since 1990, the defendants have submitted various claims to the Government.[4]  (First Am. Compl. ¶ 15.)  Fourth, the First Amended Complaint does not state <u>where</u> any false claim was made.  On the fifth and final issue, the First Amended Complaint does not explain <u>how</u> any false claim was submitted to the Government.

The First Amended Complaint is missing additional facts that Mr. Paradise would need to support an allegation that the defendants submitted a false claim to the Government.  For example, Mr. Paradise does not plead the identification number of any false claim.  He does not identify the services for which the defendants sought reimbursement.  He also does not provide the amount of any claim for payment which the defendants submitted to the Government.  Although Mr. Paradise alleges the Government paid a total of $10,025.05 for his mother's care, this allegation does not meet the Rule 9(b) standard because it is based "on information and belief."  <u>Karvelas</u>, 360 F.3d at 226 n.8 (stating that although "information and belief" pleading is permissible, it is still subject to Rule 9(b)'s particularity requirement).  Finally, Mr. Paradise fails to indicate the length of time between the defendants' practices and their submission of a claim based on those practices.  Mr. Paradise's failure to include these factual details is fatal to his Complaint.  <u>See Gagne</u>, 565 F.3d at 46 (citation omitted); <u>see also Ge</u>, 737 F.3d at 123 (quoting <u>Karvelas</u>, 360 F.3d at 232-33); <u>United States ex rel. Driscoll v. Serono, Inc.</u>, No. 00-11680-GAO, 2008 WL 728939, at *3 (D. Mass. Mar. 18, 2008) (applying Rule 9(b) to dismiss complaint lacking "specific dates, content, identification numbers, or dollar amounts of false claims actually submitted").

---

[4] Because the First Amended Complaint does not allege when the defendants submitted any particular false claim to the Government, Mr. Paradise prevents the Court and the defendants from determining whether the False Claims Act's six-year statute of limitations has run.  <u>See Rivera</u>, 55 F.3d at 707 (stating that under False Claims Act, six-year statute of limitations accrues when claim has been submitted to Government).

The First Amended Complaint also violates Rule 9(b) because it does not identify which defendant is responsible for which actions. Mr. Paradise asserts, in general, that all the defendants were responsible for submitting false claims to the Government. Because he lumps the defendants together, he cannot meet his burden to specify which defendant committed which acts. See, e.g., Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (concluding that complaint was subject to dismissal under Rule 9(b) because it "lump[ed] all the defendants together" and failed to "specify who was involved in what activity").

Mr. Paradise alleges that the defendants violated the False Claims Act in connection with their care of a countless number of patients. For example, in paragraph 59, he alleges that: "Other false claims for payment for other patients that are not specifically set forth in the paragraphs below were also submitted or caused to be submitted by the Defendants to Medicare." However, the First Amended Complaint contains no allegations at all on the defendants' care of these other patients. There are also no allegations which would specify any claims the defendants submitted to the Government for their care of the other patients. Mr. Paradise "may not circumvent Rule 9(b) with the promise that discovery will eventually fill in the missing gaps." United States ex rel. Carpenter v. Abbott Labs., Inc., 723 F. Supp. 2d 395, 401, 404 (D. Mass. 2010) (citing Karvelas, 360 F.3d at 231) (reasoning that this requirement protects society "from the costs of highly unpromising litigation").

**III.   Even if the First Amended Complaint were pled with particularity, it must be dismissed because Mr. Paradise cannot base False Claims Act liability on an alleged violation of the Patient Self-Determination Act.**

Mr. Paradise bases his False Claims Act claim on an allegation that the defendants violated the Patient Self-Determination Act. There are no reported cases—in any federal or state Court—that have even considered basing False Claims Act liability on a violation of the Patient

9

Self-Determination Act. This Court should reject Mr. Paradise's attempt to stretch the False Claims Act beyond any reasonable limits.

In his First Amended Complaint, Mr. Paradise alleges that under the Medicare and Medicaid programs, the defendants submitted annual cost reports to the Government when they requested payment. (First Am. Compl. ¶ 54.) Mr. Paradise does not assert that the cost reports referenced the Patient Self-Determination Act. Id. Instead, Mr. Paradise contends that the defendants falsely certified they had complied "with the law and regulations regarding the provision of health care services." Id. This argument fails for two reasons.

First, the First Amended Complaint fails to plead factual allegations that would rise to the level of a Patient Self-Determination Act violation. The Patient Self-Determination Act required the defendants to maintain certain "written policies and procedures." 42 U.S.C. § 1395cc(f). Although the Complaint raises a number of concerns about the care that Ms. Paradise (and other elderly patients) received, it does not allege that the defendants failed to maintain any policy or procedure which the Patient Self-Determination Act required.

Second, even if Mr. Paradise could plead sufficient facts to establish a violation of the Patient Self-Determination Act, that violation would not render the defendants' care of Ms. Paradise inappropriate and uncompensable. Under Mr. Paradise's theory, any deviation from "the law and regulations regarding the provision of health care services" would subject a hospital to False Claims Act liability. (See First Am. Compl. ¶ 54.) This would produce an absurd result. Every claim for medical malpractice involving a Medicare- or Medicaid-eligible patient, for example, would be transformed into a potential False Claims Act violation, with mandatory treble damages and attorneys' fees. This result would also contradict the First

Circuit's holding in Karvelas that "violations of federal regulations are insufficient to support a claim under the [False Claims Act]." 360 F.3d at 234 (citations omitted).

Mr. Paradise's requested expansion of False Claims Act liability should be rejected. Because Mr. Paradise cannot enforce the Patient Self-Determination Act through the False Claims Act, his claim under the False Claims Act should be dismissed.

### IV. Mr. Paradise lacks standing to pursue fraud and unjust enrichment claims on behalf of the Government.

In addition to his claim under the False Claims Act, Mr. Paradise also seeks to recover money for the Government under common-law fraud and unjust enrichment theories. (See First Am. Compl. ¶¶ 91, 94-95.) He cannot pursue these claims because he lacks standing. As this Court has concluded, the False Claims Act "does not give relators the right to assert common law claims on behalf of the United States." United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 149 (D. Mass. 2000) (citations omitted) (dismissing relator's common-law claims for fraud and unjust enrichment).

### CONCLUSION

It is clear from the First Amended Complaint that Mr. Paradise wishes something more could have been done for his mother, and that there could have been better communication about his role as her health care proxy. These allegations, however, are not relevant to his asserted claims.

Mr. Paradise is making claims under the False Claims Act and for fraud and unjust enrichment. The Court lacks subject matter jurisdiction over these claims because Mr. Paradise violated the filing and sealing requirements of the False Claims Act. His claim under the False Claims Act also must be dismissed because he cannot plead with particularity the details surrounding the defendants' alleged submission of a false claim to the Government, and because

liability under the False Claims Act cannot rest on an alleged violation of the Patient Self-Determination Act.  The fraud and unjust enrichment claims should be dismissed because Mr. Paradise does not have standing to pursue them on behalf of the Government.

The defendants respectfully request the Court to dismiss the First Amended Complaint under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6).

        MASSACHUSETTS GENERAL HOSPITAL,
        MASSACHUSETTS GENERAL HOSPITAL
        PHYSICIANS ORGANIZATION, INC., and
        MGH OPTIMUM CARE COMMITTEE,

        By their attorneys,

        /s/ Alan D. Rose
        Alan D. Rose (BBO #427280)
        Brian D. Lipkin (BBO #673850)
        Rose, Chinitz & Rose
        One Beacon Street, 23rd Floor
        Boston, Massachusetts  02108
        (617) 536-0040
        Fax: (617) 536-4400
        adr@rose-law.net
        bdl@rose-law.net

Dated:  April 18, 2014